**Carl Post, OSB No. 061058**
carlpost@civilrightsoregon.com
**John Burgess, OSB No. 106498**
johnburgess@civilrightsoregon.com
**POST BURGESS**
3835 NE Hancock St., Ste. 102
Portland, Oregon 97212
Telephone: (971) 442-9303

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| **NATHAN JACOBSEN,** | **Case No. 3:26-cv-02524** |
| Plaintiff, | **COMPLAINT** |
| v. | (42 U.S.C. § 1983 – Eighth Amendment;<br>42 U.S.C. § 1983 – First Amendment;<br>Battery; Negligence) |
| **STATE OF OREGON;**<br>**NICK JOHNSON;**<br>**KIMBERLY HENDRICKS; DAVID CLELAND; and DOES 1–5,** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Nathan Jacobsen alleges as follows:

**PRELIMINARY STATEMENT**

1. Nathan Jacobsen was sexually assaulted by the Oregon Department of Corrections employee who controlled his prison job. On June 19, 2025, Lead Food Service Coordinator Nick Johnson isolated Mr. Jacobsen in the dry-storage room of the Santiam Correctional Institution kitchen, kissed his neck, put his hand down Mr. Jacobsen's pants, and touched his genitals. Mr. Jacobsen told him to stop.

2. Johnson punished him for refusing. Over the following months Johnson told other adults in custody that Mr. Jacobsen was a sex offender who did not belong on the yard, poured water on his food and spat in it in front of the housing unit, and told him—while displaying his father's house on a work computer—that he intended to visit Mr. Jacobsen's parents and disclose that their son was gay and a sex offender. In a prison, being labeled a sex offender is a threat to a person's physical safety, and Johnson knew it.

3. Johnson should never have held authority over anyone in ODOC custody. In March 2019 he was arrested for assaulting his wife and was convicted on a plea in July 2019 of Assault in the Fourth Degree Constituting Domestic Violence. In January 2020 the Oregon Department of Public Safety Standards and Training revoked his Basic and Intermediate Corrections certifications and his Instructor certification for lack of good moral fitness and made him permanently ineligible to reapply. ODOC placed him at Santiam Correctional Institution (SCI) anyway, as Lead Food Service Coordinator, supervising adults in custody in a minimum-security institution.

4. Mr. Jacobsen reported Johnson through every channel available to him: his counselor, a PREA call, a discrimination complaint, three written grievances, and two separate reports to the officer in charge. ODOC's response was to leave him working under Johnson for approximately three more months. Mr. Jacobsen ultimately had to give up the culinary apprenticeship he had stayed in the kitchen to complete. Johnson remained employed.

5. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of his rights under the Eighth and First Amendments to the United States Constitution, and under Oregon law for battery and negligence.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

6. Plaintiff seeks compensatory damages, punitive damages against the individual defendants, equitable relief, and attorney fees and costs as set forth below.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights).

8. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred at Santiam Correctional Institution in Marion County, Oregon, and because Defendants reside in this District. Assignment to the Portland Division is proper under Local Rule 3-2.

## PARTIES

10. Plaintiff Nathan Jacobsen is a citizen of the United States. At all times material to this Complaint he was an adult in custody of ODOC housed at SCI.

11. Defendant State of Oregon operates the Oregon Department of Corrections, which owns, staffs, and operates SCI.

12. Defendant Nick Johnson was at all times material to this Complaint employed by ODOC as the Lead Food Service Coordinator at SCI. He is sued in his individual capacity.

13. Defendant Kimberly Hendricks was at all times material to this Complaint the Superintendent of SCI and was responsible for the safety of adults in custody housed there, for the supervision and assignment of SCI staff, and for SCI's compliance with ODOC policy and



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

the Prison Rape Elimination Act. She is sued in her individual capacity for damages and in her official capacity for equitable relief.

14. Defendant David Cleland was at all times material to this Complaint a correctional lieutenant and officer in charge at SCI. He is sued in his individual capacity.

15. Defendants Does 1 through 5 are ODOC employees whose identities are not presently known to Plaintiff and who (a) participated in the decision to hire, retain, or assign Johnson to a position with supervisory authority over adults in custody after his conviction and decertification, and/or (b) received and failed to act on Plaintiff's reports of Johnson's conduct. Plaintiff will amend this Complaint to name these defendants once their identities are ascertained through discovery. They are sued in their individual capacities.

16. At all times material to this Complaint, each individual defendant acted under color of state law.

17. At all times material to this Complaint, Johnson and the other ODOC employees described in this Complaint were acting within the course and scope of their employment with the State of Oregon. Plaintiff pleads in the alternative, as to Counts IV and V, that if any such conduct is found to have fallen outside the course and scope of employment, Johnson is individually liable for it.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TORT CLAIM NOTICE

18. Plaintiff exhausted all administrative remedies that were available to him within the meaning of 42 U.S.C. § 1997e(a).

19. On or about August 15, 2025, Plaintiff submitted to the SCI Grievance Office a Discrimination Complaint, assigned number SCI_2025_08_019, concerning Johnson's



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

statements to other adults in custody that Plaintiff was a sex offender, Johnson's disclosure of information from Plaintiff's institutional file, and Plaintiff's resulting fear of retaliation.

20. On or about the same date, Plaintiff submitted grievance SCI_2025_08_020, concerning Johnson's statements about traveling to visit Plaintiff's mother and father and his display of Plaintiff's father's home on a work computer.

21. On or about the same date, Plaintiff submitted grievance SCI_2025_08_021, concerning Johnson's conduct in the main dining hall on July 22, 2025, including pouring water on Plaintiff's food and spitting into it.

22. On September 16, 2025, SCI notified Plaintiff that SCI_2025_08_019 and SCI_2025_08_020 had been forwarded for investigation outside the administrative remedies process, that he would be notified of the outcome by the institution's PREA Compliance Manager, and that no further grievance response or appeal would be provided because the grievance process was concluded as to those matters.

23. On September 16, 2025, SCI accepted grievance SCI_2025_08_021. On September 25, 2025, SCI responded that Plaintiff's allegations had been forwarded to the Office of Inspector General for investigation.

24. On March 9, 2026, Plaintiff submitted grievance SCI_2026_03_003, reporting that Johnson had sexually assaulted him in the SCI dry-storage area in June 2025. The SCI Grievance Office received it on March 10, 2026. On March 13, 2026, SCI accepted the grievance, forwarded it for investigation, and again advised Plaintiff that no further grievance response or appeal would be provided and that the grievance process was concluded.

25. By ODOC's own written responses, no further administrative process remained available to Plaintiff on any of the matters alleged in this Complaint.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

26. On July 20, 2026, Plaintiff submitted a public records request for the conclusion of the Special Investigations Unit investigation into his allegations. ODOC acknowledged the request on July 24, 2026, and denied it on August 7, 2026, asserting the exemption at ORS 192.355(5) and stating that Plaintiff had been verbally informed of the outcome on May 21, 2026 and August 7, 2026. As of the filing of this Complaint, ODOC has never provided Plaintiff with written notice of the outcome of the investigation into his allegations of sexual abuse.

27. Plaintiff satisfied the notice requirement of the Oregon Tort Claims Act, ORS 30.275, by delivering written notice of his claims to the State of Oregon.

## FACTUAL ALLEGATIONS

### A. Johnson's Criminal Conviction, Decertification, and Continued Employment by ODOC

28. On May 5, 2008, ODOC hired Nick Johnson as a Correctional Officer at Oregon State Penitentiary.

29. DPSST granted Johnson a Basic Corrections Officer certificate on March 17, 2009, an Intermediate Corrections Officer certificate on November 29, 2012, and an Instructor certificate on March 12, 2018.

30. On March 18, 2019, Johnson was arrested in Yamhill County, Oregon and charged with Assault in the Fourth Degree Constituting Domestic Violence, ORS 163.160(3), a felony, and with Harassment, ORS 166.065(3). State of Oregon v. Nicholas Adam Johnson, Yamhill County Circuit Court Case No. 19CR18178.

31. On July 2, 2019, Johnson pleaded guilty and was convicted of Assault in the Fourth Degree Constituting Domestic Violence. The assault count was reduced to a Class A



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

misdemeanor at the time of the plea, and the harassment count was dismissed. Johnson was sentenced to 48 hours in the county jail and 24 months of supervised probation.

32. ODOC's personnel records reflect that Johnson's last recorded employment action at Oregon State Penitentiary was a leave of absence effective July 14, 2019.

33. On July 25, 2019, DPSST issued a Notice of Intent to Revoke Certifications and Proposed/Final Order on Default, proposing to revoke Johnson's corrections and instructor certifications based on his July 2, 2019 conviction. DPSST served the notice on July 26, 2019. Johnson timely requested a contested case hearing.

34. On November 18, 2019, DPSST served Johnson with an Amended Notice of Intent to Revoke Certifications. DPSST proposed to revoke Johnson's Basic and Intermediate Corrections certifications for lack of good moral fitness on two separate and independent grounds under OAR 259-008-0010(6)(a): that he had been convicted of a felony crime, OAR 259-008-0070(2)(a)(B), and that he had been convicted of an offense involving domestic violence, OAR 259-008-0070(2)(a)(E). DPSST proposed to revoke his Instructor certification on parallel grounds under OAR 259-008-0080(9)(a)(B) and (E).

35. On or about January 22, 2020, an administrative law judge granted DPSST's motion for summary determination. Johnson's Basic and Intermediate Corrections certifications and his Instructor certification were revoked, and he was made permanently ineligible to reapply for any of them.

36. Notwithstanding his conviction for an offense involving domestic violence and the permanent revocation of his professional certifications for lack of good moral fitness, ODOC employed Johnson at SCI as Lead Food Service Coordinator, a position with day-to-day supervisory authority over adults in custody working in the SCI kitchen.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

37. Upon information and belief, ODOC supervisory officials responsible for Johnson's hiring, retention, supervision, and assignment knew or reasonably should have known of Johnson's conviction and of the revocation of his certifications before assigning him supervisory authority over adults in custody.

38. Upon information and belief, while employed as a Correctional Officer assigned to special housing at Oregon State Penitentiary, Johnson made a practice of reviewing the confidential institutional files of adults in custody and disclosing the sex-offense histories of individual adults in custody to other adults in custody, exposing them to violence.

**B. Plaintiff's Assignment to the SCI Kitchen**

39. On April 1, 2025, Plaintiff transferred from Eastern Oregon Correctional Institution to SCI.

40. On April 7, 2025, Plaintiff was assigned to a work position in the SCI kitchen. Plaintiff did not want the assignment, but he had extensive prior kitchen experience, including as a Lead Cook at Oregon State Penitentiary and at EOCI, and Johnson wanted him in the kitchen.

41. As Lead Food Service Coordinator, Johnson controlled Plaintiff's daily work assignments, his hours, his performance evaluations, his rate of pay in PRAS points, his access to the Culinary Apprenticeship Program, and his ability to transfer to a different institutional job. Johnson also had the authority to initiate misconduct reports against Plaintiff.

42. During Plaintiff's first weeks in the kitchen, Johnson repeatedly praised Plaintiff's work and urged him to stay.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

**C. Johnson Blocks Plaintiff's Transfer Out of the Kitchen**

43. In early May 2025, Plaintiff sought a clerk and worker position at the SCI Physical Plant. Plaintiff's bunkmate worked there and spoke to the Physical Plant supervisor on Plaintiff's behalf.

44. Plaintiff submitted a kyte expressing interest in the position, was interviewed, and was a strong candidate for the job.

45. Johnson learned that Plaintiff intended to leave the kitchen. Johnson tried to persuade him to stay, offering to help him complete the kitchen apprenticeship, to make him his clerk, and to raise his pay to 17 PRAS points.

46. Plaintiff declined and asked Johnson to put in a good word for him with the Physical Plant.

47. Instead, Johnson contacted Physical Plant staff and told them that Plaintiff would not be a good fit, that he was not a good worker, and that he was better off in the kitchen. Those statements were false and Johnson knew they were false.

48. Plaintiff was denied the Physical Plant position because of Johnson's statements.

49. Plaintiff confronted Johnson in a hallway in the presence of the Physical Plant coordinator. Johnson became flustered, apologized to Plaintiff and to the coordinator, and acknowledged that Plaintiff was a good worker who would have been a good fit—but the position had by then been filled.

50. Plaintiff reported Johnson's interference to Defendant Lt. Cleland, the officer in charge. Cleland told Plaintiff to remind him the following Monday and said he would take care of it. Plaintiff did not see Cleland again for approximately two months, and Cleland took no action.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

51. Johnson then offered Plaintiff the freezer clerk position and the first available placement in the SCI Culinary Apprenticeship Program. Having been shut out of the only other job available to him, Plaintiff accepted.

**D. Johnson Accesses Plaintiff's Confidential Records and Begins Grooming Him**

52. By the end of May 2025, Plaintiff was working closely and often alone with Johnson.

53. Plaintiff learned that Johnson had accessed his records in the ODOC computer system and had reviewed information having nothing to do with Plaintiff's kitchen assignment, including Plaintiff's sexual orientation, his disciplinary history, a prior incident at Oregon State Penitentiary in which Plaintiff was the victim of a PREA-reportable assault, and information identifying Plaintiff's family members.

54. Johnson had no legitimate penological or work-related purpose for accessing any of that information.

55. Johnson began repeatedly questioning Plaintiff about his sexual orientation, about what he did or liked to do with men, about how long he had been doing so, and about whether his family knew he was gay.

56. Johnson gave Plaintiff ice cream and other items that other adults in custody wanted but could not obtain, and he arranged for Plaintiff to accompany him on freezer and dry-storage inventory checks, out of sight of other staff and other adults in custody.

57. Plaintiff did not invite, encourage, or welcome any of this conduct.

**E. Johnson Sexually Assaults Plaintiff on June 19, 2025**

58. On June 19, 2025, in the course of preparations for the institution's holiday barbecue meal, Johnson directed Plaintiff to assist him with inventory in the dry-storage area of the SCI kitchen.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

59. Johnson and Plaintiff were alone in the dry-storage area.

60. Johnson approached Plaintiff from behind and kissed him on the neck.

61. Johnson put his hand inside Plaintiff's pants and touched Plaintiff's penis.

62. Johnson asked Plaintiff to touch his penis and to kiss him.

63. Plaintiff was frightened. He told Johnson to stop, told him he did not want to do that with him, and made clear that he did not consent.

64. Plaintiff was at that time a person confined in a correctional facility and Johnson was an employee of that facility. Under Oregon law, Plaintiff could not lawfully consent to sexual contact with Johnson, and Johnson's conduct constituted custodial sexual misconduct. See ORS 163.454; ORS 163.452.

65. Johnson became visibly angry when Plaintiff refused him.

66. Plaintiff did not immediately report the assault because Johnson controlled his job, his pay, his apprenticeship, and his exposure to institutional discipline, and because Plaintiff feared that he, rather than Johnson, would be blamed and punished.

67. The assault involved unwanted physical contact with Plaintiff's body and caused Plaintiff physical injury and physical symptoms, including sleep disruption and stress and anxiety.

### F. Johnson Retaliates by Labeling Plaintiff a Sex Offender

68. In the days and weeks after Plaintiff refused him, Johnson began telling other adults in custody, in and around the kitchen and on the yard, that Plaintiff was a sex offender, that he had bad charges, and that he should not be permitted to walk the yard.

69. Johnson told other adults in custody that he had read Plaintiff's institutional file and knew his history.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

70. Johnson approached AIC Smith, SID #16837221, while Smith and Plaintiff were using the weight equipment in the recreation area, and told Smith that Plaintiff was a sex offender with bad charges who should not be on the yard with him, and that he had read this in Plaintiff's file.

71. Johnson also called Plaintiff derogatory names in front of other adults in custody, including "sister fucker" and "undercover fag."

72. Johnson knew, from more than a decade of experience as a correctional officer, that identifying a person in custody as a sex offender to the general population exposes that person to a substantial risk of assault, extortion, and intimidation.

73. Other adults in custody believed Johnson and began treating Plaintiff as a sex offender, placing him in danger.

**G. Johnson Escalates: July 22 and July 23, 2025**

74. On July 22, 2025, between approximately 7:40 a.m. and 8:00 a.m., Plaintiff came to the kitchen early to assist with the weekly inventory truck delivery. With the permission of Food Service Coordinators Green and Tom, Plaintiff heated leftover eggs and potatoes and sat down to eat in the main dining hall, within view of three security cameras.

75. Johnson came out into the dining hall, laughed, and announced to the other adults in custody present that Plaintiff was no good and had bad charges. Johnson then poured water onto Plaintiff's potatoes and spat into his eggs. Other adults in custody laughed and carried the story back into the kitchen.

76. The July 22, 2025 incident was captured by SCI security cameras and witnessed by approximately ten adults in custody.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

77. On July 23, 2025, Johnson approached Plaintiff and AIC Runion, SID #08776500, and asked Plaintiff to guess where he was going that weekend. When Plaintiff said he did not know, Johnson said he was going to Blythe, California.

78. Plaintiff's father, Maurice Playford, lives in Blythe, California. Plaintiff reacted visibly and asked why Johnson was going there. Johnson said he was going to meet a "Maurice Playford" and buy a boat from him.

79. Johnson then said he was also going to South Carolina to meet a "Crissa Sandoval." Crissa Sandoval is Plaintiff's mother.

80. Plaintiff told Johnson that he was extremely uncomfortable with what Johnson was saying. Johnson responded that he had to let Plaintiff's parents know that Plaintiff was gay and a sex offender.

81. In front of Plaintiff and AIC Runion, Johnson used his ODOC work computer to open Google Maps, entered Plaintiff's father's address, and displayed the house in satellite view, asking Plaintiff whether that was his father's place.

82. Plaintiff and AIC Runion both told Johnson that what he was doing was wrong and asked how he had obtained information about Plaintiff's family. Johnson answered, "Wouldn't you like to know. I have my ways."

83. Johnson had no legitimate purpose for obtaining or using information about Plaintiff's parents. Upon information and belief, ODOC's computer systems generate audit records of Johnson's access to Plaintiff's institutional file and of his use of his ODOC workstation on July 23, 2025.

### H. Plaintiff Reports Johnson

84. Plaintiff reported Johnson's conduct to his counselor, Mr. Wagner.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

85. Plaintiff placed a PREA call reporting Johnson.

86. Plaintiff submitted the discrimination complaint and grievances described above.

87. Plaintiff separately reported Johnson's conduct to Defendant Cleland and asked for help.

88. Cleland indicated that he would address the matter. He did not take any meaningful action to protect Plaintiff, to separate Plaintiff from Johnson, or to stop Johnson's conduct.

**I. ODOC Leaves Plaintiff Working Under Johnson**

89. After Plaintiff reported him, Johnson was not removed from the kitchen, was not separated from Plaintiff, and was not restricted from contact with Plaintiff.

90. Plaintiff remained assigned to work under Johnson in the SCI kitchen for approximately three more months, in part because leaving would have cost him the culinary apprenticeship and certifications he had stayed in the kitchen to obtain.

91. During that period Johnson continued to retaliate. He instructed other food service coordinators and the adults in custody who worked as his clerks—known to Plaintiff as "Foreman" and "Treetop"—to watch Plaintiff, to scrutinize his work for any error that could be used to fire him, to assign him unnecessary tasks such as washing walls, and to extend his hours, for the stated purpose of making Plaintiff quit.

92. Plaintiff again reported Johnson's conduct to Defendant Cleland and requested to be removed from the kitchen.

93. No defendant removed Johnson. Plaintiff was instead forced to choose between continued abuse and his apprenticeship. He gave up the apprenticeship and left the kitchen assignment, forfeiting the certifications and the higher PRAS pay rate.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

94. Johnson was not removed from the SCI kitchen until approximately October or November 2025—roughly two months after Plaintiff's written complaints and approximately four months after the assault. Upon information and belief, Johnson remains employed by ODOC at SCI and works in the administrative building.

95. At no point did Defendants provide Plaintiff with timely, confidential access to victim advocacy or counseling services following his report of sexual abuse, protect him from retaliation for reporting, or provide him written notice of the outcome of the investigation into his allegations.

**J. The Investigation**

96. Plaintiff's allegations were referred to ODOC's Special Investigations Unit and to the Office of the Inspector General. The assigned investigator was Inspector 3 Dawn Persels.

97. Plaintiff and his witnesses were interviewed. Plaintiff received no written notice of the outcome of the investigation. ODOC has stated only that Plaintiff was verbally informed of the outcome on May 21, 2026 and August 7, 2026, and has refused to produce the conclusion of the investigation to him.

**K. Plaintiff's Injuries**

98. As a direct and foreseeable result of Defendants' conduct, Plaintiff suffered physical injury, severe emotional distress, humiliation, fear for his physical safety, aggravation and recurrence of pre-existing post-traumatic stress symptoms, and ongoing psychological harm.

99. Plaintiff also suffered economic loss, including the loss of his kitchen position, the loss of the higher PRAS pay rate he had been assigned, and the loss of the Culinary Apprenticeship Program placement and the certifications it would have produced—certifications with direct value to his employment prospects upon release.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

100. Plaintiff continues to be regarded by other adults in custody as a sex offender as a result of Johnson's statements, and continues to face a heightened risk of violence on that account.

101. Each Defendant's acts and omissions were a substantial factor in causing Plaintiff's injuries.

## COUNT I

**(42 U.S.C. § 1983 — Eighth Amendment — Sexual Assault)**

**(Against Defendant Johnson)**

102. Plaintiff realleges each preceding paragraph as though fully set forth herein.

103. The Eighth Amendment prohibits an employee of a correctional institution from subjecting a person in custody to sexual contact. That right was clearly established at all times material to this Complaint.

104. Johnson, acting under color of state law and using the authority his position gave him over Plaintiff, isolated Plaintiff and subjected him to unwanted sexual contact on June 19, 2025.

105. Because Plaintiff was in custody and Johnson controlled the conditions of his confinement and employment, Plaintiff was incapable of giving legally meaningful consent, and any apparent acquiescence would not be a defense.

106. Johnson's conduct served no legitimate penological purpose and was objectively serious.

107. Johnson acted maliciously and sadistically, and with deliberate indifference to Plaintiff's rights, health, and safety.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

108. As a direct and proximate result, Plaintiff suffered the injuries described above and is entitled to compensatory damages in an amount to be determined by a jury.

109. Johnson's conduct was willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights. Plaintiff is entitled to punitive damages against Johnson in an amount fixed by a jury sufficient to punish him and to deter similar conduct.

110. Plaintiff is entitled to attorney fees and costs under 42 U.S.C. § 1988.

## COUNT II

**(42 U.S.C. § 1983 — First and Eighth Amendments — Retaliation)**

**(Against Defendant Johnson)**

111. Plaintiff realleges each preceding paragraph as though fully set forth herein.

112. Plaintiff engaged in conduct protected by the First Amendment when he filed grievances, a discrimination complaint, and a PREA report, and when he reported Johnson's conduct to his counselor and to the officer in charge.

113. Plaintiff also had a clearly established Eighth Amendment right to refuse sexual contact with a correctional employee without being punished for the refusal.

114. Johnson took adverse action against Plaintiff because of that protected conduct, including by:

a. identifying Plaintiff to other adults in custody as a sex offender, knowing that doing so exposed Plaintiff to a substantial risk of violence;

b. disclosing information from Plaintiff's confidential institutional file, including his sexual orientation and disciplinary history;

c. publicly humiliating Plaintiff by pouring water on his food and spitting into it;



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

d. threatening to contact Plaintiff's parents and disclose his sexual orientation and a false criminal history, and demonstrating that he knew where Plaintiff's father lived;

e. directing other staff and other adults in custody to scrutinize Plaintiff's work, assign him unnecessary tasks, and extend his hours in order to force him to quit; and

f. causing Plaintiff to lose his position and his placement in the Culinary Apprenticeship Program.

115. Johnson's actions would chill a person of ordinary firmness from continuing to engage in protected activity, and in fact chilled Plaintiff.

116. Johnson's actions advanced no legitimate correctional goal.

117. As a direct and proximate result, Plaintiff suffered the injuries described above. Plaintiff is entitled to compensatory damages, punitive damages against Johnson, and attorney fees and costs under 42 U.S.C. § 1988.

**<u>COUNT III</u>**

**(42 U.S.C. § 1983 — Eighth Amendment — Failure to Protect)**

**(Against Defendants Hendricks, Cleland, and Does 1–5)**

118. Plaintiff realleges each preceding paragraph as though fully set forth herein.

119. The Eighth Amendment required Defendants to take reasonable measures to guarantee Plaintiff's safety while he was in their custody, including protecting him from harm at the hands of ODOC staff.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

120. Plaintiff faced a substantial risk of serious harm from Johnson: sexual abuse by the employee who controlled his work assignment, and violence from other adults in custody who had been told by that employee that Plaintiff was a sex offender.

121. Each of these Defendants knew of that risk and disregarded it:

a. Defendant Cleland was told twice by Plaintiff about Johnson's conduct—first about Johnson's interference with his transfer, and later about Johnson's ongoing harassment and retaliation—and took no meaningful action on either occasion;

b. Defendants Hendricks and Does 1–5 received Plaintiff's discrimination complaint, grievances, and PREA report in August and September 2025, which described in detail Johnson's statements identifying Plaintiff as a sex offender to the general population, and nevertheless permitted Johnson to continue supervising Plaintiff for approximately two more months;

c. Defendants Hendricks and Does 1–5 failed to separate Plaintiff from Johnson during the pendency of an active investigation into Plaintiff's allegations against Johnson;

d. Defendants Hendricks and Does 1–5 failed to protect Plaintiff from retaliation after he reported sexual abuse; and

e. Defendants Does 1–5 assigned and retained Johnson in a position of supervisory authority over adults in custody with actual knowledge of his conviction for an offense involving domestic violence and of DPSST's revocation of his certifications for lack of good moral fitness.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

122. Defendants' responses to the risk were objectively unreasonable. The obvious and available measures—removing Johnson from the kitchen, transferring Plaintiff to the Physical Plant position he had sought, or imposing a no-contact directive—were not taken for months.

123. Defendants acted with deliberate indifference to Plaintiff's constitutional rights.

124. As a direct and proximate result, Plaintiff suffered the injuries described above. Plaintiff is entitled to compensatory damages, punitive damages against each individual Defendant, equitable relief, and attorney fees and costs under 42 U.S.C. § 1988.

**COUNT IV**

**(Battery)**

**(Against Defendant State of Oregon)**

125. Plaintiff realleges each preceding paragraph as though fully set forth herein.

126. Johnson intentionally caused harmful and offensive contact with Plaintiff's person on June 19, 2025, when he kissed Plaintiff's neck and touched Plaintiff's genitals without consent.

127. Johnson again intentionally caused offensive contact with Plaintiff on July 22, 2025, when he poured water onto Plaintiff's food and spat into it while Plaintiff was eating.

128. Plaintiff did not consent to any of this contact and, as a person in ODOC custody, could not lawfully consent to sexual contact with Johnson.

129. Johnson was at all material times an employee of the State of Oregon acting within the course and scope of his employment. Johnson's authority to assign Plaintiff to work in the dry-storage area, to direct Plaintiff to work alone with him, to control Plaintiff's job and pay, and to access Plaintiff's institutional records were all incidents of his employment, and Johnson used



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

each of them to accomplish the acts alleged. The conduct that culminated in the assault began as, and was carried out through, the performance of his job duties.

130. Under ORS 30.265(3), the State of Oregon is the sole proper defendant for tort claims arising from the conduct of its employees acting within the course and scope of employment.

131. As a direct and proximate result, Plaintiff suffered the injuries described above and is entitled to compensatory damages in an amount to be determined by a jury, together with costs and disbursements.

## COUNT V

### (Negligence, Including Negligent Hiring, Retention, and Supervision)

### (Against Defendant State of Oregon)

132. Plaintiff realleges each preceding paragraph as though fully set forth herein.

133. By taking Plaintiff into custody, the State of Oregon deprived him of the ordinary means of protecting himself. The State determined where Plaintiff lived, where he worked, whom he worked for, when he ate, and whom he was required to be alone with. A person who was not incarcerated could have quit the job, avoided Johnson, or called the police. Plaintiff could do none of those things.

134. That custodial relationship imposed on the State a heightened, non-delegable duty of care to protect Plaintiff from foreseeable harm, including harm inflicted by its own employees.

135. The State of Oregon breached that duty, including by:

a. hiring, retaining, and assigning Johnson to a position with supervisory authority over adults in custody after he was convicted of an offense involving domestic



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

violence and after DPSST permanently revoked his corrections and instructor certifications for lack of good moral fitness;

b. failing to supervise Johnson's access to confidential ODOC records concerning adults in custody, and failing to detect or act on his access to Plaintiff's file, his PREA history, and information about Plaintiff's family, none of which bore any relationship to Johnson's food service duties;

c. permitting Johnson to direct individual adults in custody to work alone with him in unmonitored areas of the kitchen;

d. failing to act on Plaintiff's reports to his counselor, to Lt. Cleland, and through the grievance, discrimination complaint, and PREA processes;

e. failing to separate Plaintiff from Johnson during an active investigation of Plaintiff's allegations against Johnson;

f. failing to protect Plaintiff from retaliation after he reported sexual abuse; and

g. failing to provide Plaintiff timely and confidential access to counseling and victim advocacy services after he reported sexual abuse.

136. It was reasonably foreseeable that assigning a decertified employee with a conviction for violence to supervise adults in custody, without meaningful oversight of his access to their confidential records or of his unmonitored contact with them, would result in harm of the kind Plaintiff suffered.

137. The State's conduct was unreasonable in light of the risk. Plaintiff's injuries would have been avoided had SCI staff acted when Plaintiff first reported Johnson, or had Plaintiff been permitted to take the Physical Plant position he was denied because of Johnson's interference.



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

138. As a direct and proximate result of the State of Oregon's negligence, Plaintiff suffered economic loss, physical injury, and emotional distress, and is entitled to compensatory damages in an amount to be determined by a jury, together with a prevailing party fee, costs, and disbursements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For compensatory damages in an amount to be determined by a jury, sufficient to fully compensate Plaintiff for his physical injury and physical pain;

B. For compensatory damages sufficient to fully compensate Plaintiff for his emotional distress;

C. For compensatory damages sufficient to fully compensate Plaintiff for his economic losses, including lost institutional wages and the lost value of the Culinary Apprenticeship Program placement and certifications;

D. For punitive damages against Defendants Johnson, Hendricks, Cleland, and Does 1–5 in an amount to be fixed by a jury;

E. For equitable relief as appropriate;

F. For reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

G. For Plaintiff's costs, disbursements, and prevailing party fee on his state law claims; and

H. For such other and further relief as the Court deems just and equitable.

///



POST BURGESS
3835 NE Hancock St., Ste. 102
Portland, OR 97212
(971) 442-9303

**Plaintiff demands a trial by jury on all claims allowed.**

Dated: November 17, 2026

**POST BURGESS**

*s/ Carl Post*
Carl Post, OSB No. 061058
carlpost@civilrightsoregon.com
John Burgess, OSB No. 106498
johnburgess@civilrightsoregon.com
Attorneys for Plaintiff